# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BENJAMIN RITCHIE, ) | |
| ) | |
| Petitioner, ) | No. 1:08-CV-0503-RLY/MJD |
| ) | |
| v. ) | **EXECUTION SCHEDULED** |
| ) | **MAY 20, 2025, AT 12:00 AM** |
| RON NEAL, Superintendent ) | |
| Indiana State Prison, ) | *CAPITAL CASE* |
| ) | |
| Respondent. ) | |

## EMERGENCY MOTION FOR STAY OF EXECUTION

Petitioner Benjamin Ritchie respectfully requests a stay of execution pending the Court's consideration of his Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b)(6). Doc. No. 64.

Mr. Ritchie's case presents the extraordinary situation of prior counsel's conflict of interest during federal habeas proceedings—for which federal law "necessarily" entitles him to counsel who can "meaningfully research and present [his] habeas claims." *McFarland v. Scott*, 512 U.S. 849, 858 (1994). Mr. Ritchie was denied that right given prior counsel's conflict of interest, which caused him to lose out on review of meritorious claims for habeas relief—one of which the state court denied him the opportunity to present on an evenly divided 2-2 vote on procedural grounds. *Ritchie v. State*, 254 N.E.3d 1064 (Ind. 2025).

Without intervention, Mr. Ritchie will be executed without having received a fair opportunity to petition for federal habeas relief and raise these claims because his attorneys labored under a conflict of interest that prevented them from advancing his interests. Instead of withdrawing or taking action to remedy the conflict, they did nothing while habeas proceedings were still ongoing, including discuss the conflict with each other or Mr. Ritchie.

Eventually both attorneys abandoned Mr. Ritchie, but neither withdrew until the State announced its intent to execute him. Mr. Ritchie is entitled to an opportunity to seek relief from the conduct of his prior attorneys with the assistance of conflict-free counsel. *Christeson v. Roper*, 574 U.S. 373, 380-81 (2015).

Mr. Ritchie brings this matter to the Court at the earliest possible opportunity, having secured conflict-free representation after his prior counsel left the case under the impending specter of an execution date. Staying the execution so that conflict-free counsel can present Mr. Ritchie's claim is necessary. "[I]t is never too late for courts in habeas corpus proceedings to look straight through procedural screens in order to prevent forfeiture of life or liberty in flagrant defiance of the Constitution. Perhaps there is no more exalted judicial function." *Brown v. Allen*, 344 U.S. 443, 554 (1953) (Black, J., dissenting).

I.   **Relevant background.**

Benjamin Ritchie was sentenced to death for first-degree murder and related counts. The Indiana Supreme Court upheld his murder conviction and death sentence on direct appeal, *Ritchie v. State*, 809 N.E.2d 258 (Ind. 2004), and in state postconviction proceedings, *Ritchie v. State*, 875 N.E.2d 706 (Ind. 2007).

In 2008, Mr. Ritchie filed a federal habeas corpus petition in this Court. Doc. No. 11. Attorneys Joseph Cleary and Brent Westerfeld, who represented Mr. Ritchie during state postconviction proceedings, again represented him in this Court. This Court denied habeas relief on April 23, 2014. Doc. Nos. 32, 33. On appeal, the Seventh Circuit declined to issue a COA. *Ritchie v. Neal*, No. 15-1925 (7th Cir. Feb. 24, 2016).

After the Indiana Attorney General publicly announced that the State would seek an execution date for Mr. Ritchie, Cleary and Westerfeld withdrew as counsel in this Court on

September 17, 2024, Doc. Nos. 56, 57, and Cleary withdrew in state court. Doc. No. 64-1, at App.012-13.[1]

On September 27, 2024, the State filed a motion in the Indiana Supreme Court requesting that an execution date be set for Mr. Ritchie. Doc. No. 64-1, at App.001-05. On November 1, 2024, newly appointed state court counsel filed a response to the State's motion to set an execution date and a motion for permission to file a successive petition for state postconviction relief. Doc. No. 64-1, at App.015-17, 24-66.

On April 15, 2025, an equally divided 2-2 Indiana Supreme Court denied the request to file a successive postconviction petition and granted the State's motion to set an execution date, setting it before sunrise on May 20, 2025. *Ritchie*, 254 N.E.3d at 1065. On April 30, the Indiana Supreme Court denied rehearing, again in a 2-2 order. Doc. No. 64-1, at App.302.

On October 10, 2024, this Court granted undersigned counsel's motion to be appointed as federal habeas counsel for Mr. Ritchie. Doc. No. 61. Upon appointment, undersigned counsel undertook a review and investigation of the case, which led to the discovery of prior counsel's conflict of interest during these proceedings and abandonment of Mr. Ritchie. Doc. No. 64.

**II.     This Court should grant Mr. Ritchie a stay of execution.**

This Court should grant Mr. Ritchie a stay of execution in light of his pending Rule 60(b)(6) motion so that he may have the opportunity to seek relief from the conduct of his prior attorneys with the assistance of conflict-free counsel. Otherwise, Mr. Ritchie's

---

[1] It appears that Westerfeld inadvertently failed to move to withdraw in state court.

3

substantial constitutional claims—which were not previously raised due to the conflict of interest—will never be heard on the merits by at least one court before he is killed. This Court may grant a stay if Mr. Ritchie establishes: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of the stay; (3) the balance of equities tips in his favor; and, (4) that public interest supports a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Mr. Ritchie meets these requirements.

    a.  **Mr. Ritchie is substantially likely to succeed on the merits.**

"[A]t such a preliminary stage, the applicant need not show that it definitely will win the case. . . . [The showing] normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Mr. Ritchie is likely to prevail in moving to reopen the judgment under Federal Rule of Civil Procedure 60(b)(6). As laid out more fully in his Rule 60(b)(6) motion, Mr. Ritchie's federal habeas proceeding was rendered defective by prior counsel's conflict of interest, which prevented them from advancing his interests before this Court. Because this is an appropriate basis for Rule 60(b)(6) relief and the extraordinary circumstances of this case justify such relief, Mr. Ritchie is substantially likely to succeed in reopening the judgment.

As an initial matter, Mr. Ritchie need only show that he is substantially likely to succeed in reopening the judgment because that would resume Mr. Ritchie's initial federal habeas proceeding. *Cf. Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998) (finding that even though claim was raised later in time, there was still technically only one habeas application because the claim was not second or successive). "If the district court cannot dismiss the [initial habeas] petition on the merits before the scheduled execution," the court

4

"must issue a stay to prevent the case from becoming moot." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

Mr. Ritchie is seeking to attack a "defect in the integrity of the federal habeas proceeding." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). While Mr. Ritchie's initial habeas proceeding was still before this Court, the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), which created an exception through which substantial but procedurally defaulted claims of ineffective assistance of trial counsel can be heard in federal court based on the ineffective assistance of state postconviction counsel. However, investigating and raising a claim under *Martinez/Trevino* would have required Mr. Ritchie's federal habeas counsel to plead the ineffectiveness of state postconviction counsel—something Cleary and Westerfeld could not do because they represented Mr. Ritchie in both forums. This created an "obvious conflict of interest" because it would have required them to "denigrate their own performance." *Christeson*, 574 U.S. at 378-79. The conflict "precluded a merits determination" of procedurally defaulted claims of ineffective assistance of trial counsel. *Gonzalez*, 545 U.S. at 532. *See also Clark v. Davis*, 850 F.3d 770, 779−80 (5th Cir. 2014) ("To the extent that [petitioner's] Rule 60(b)(6) motion attacks not the substance of the federal court's resolution of the claim on the merits, but asserts that [counsel] had a conflict of interest that resulted in a defect in the integrity of the proceedings, the motion is not an impermissible successive petition.").

Despite being fully aware of this conflict, prior counsel did nothing to address it during the remainder of Mr. Ritchie's federal habeas proceeding, including apprising the Court or Mr. Ritchie of the conflict, withdrawing from the case, or seeking the appointment of conflict-free counsel to review their state court performance. "Given the obvious conflict

5

of interest," Cleary and Westerfeld could not function as Mr. Ritchie's counsel during his initial federal habeas proceeding and Mr. Ritchie was effectively left with no counsel at all. *Christeson,* 574 U.S. at 379. Instead, both attorneys abandoned him in turn. Cleary did so while proceedings were before this Court when he took a job as a trial lawyer in a Federal Public Defender office that prohibited the outside practice of law; Westerfeld did so upon losing on appeal. Because of this abandonment, Mr. Ritchie was unknowingly left without attorneys working on his behalf; Cleary and Westerfeld remained designated in this Court and state court as ostensibly still representing him.

Mr. Ritchie has proffered two "good claim[s]" that he would be able to raise upon reopening of the judgment. *Buck v. Davis*, 580 U.S. 100, 126 (2017). First, despite arguing that Mr. Ritchie was prenatally exposed to alcohol, trial counsel failed to investigate and present evidence of Mr. Ritchie's FASD, the "clear" cause of his severe brain damage and impairments. Doc. No. 64-1, at App.156. This failure was damning because FASD "would have been substantively different" from other evidence the jury heard as it could have "provided to the jury evidence of a neurological defect that *caused* [Mr. Ritchie's] criminal behavior." *Williams*, 914 F.3d at 315-18. This claim is made all the more extraordinary given that it was denied on procedural grounds by an evenly divided 2-2 Indiana Supreme Court over the dissents of two justices who recognized the compelling nature of this claim. *Ritchie*, 254 N.E.3d at 1069-70 (Goff, J., dissenting in part, concurring in result); *id*. at 1070-71 (Rush, C.J., dissenting).

Second, trial counsel likewise failed to investigate and present evidence of Mr. Ritchie's early childhood lead poisoning, which added to and compounded the debilitating impairments Mr. Ritchie suffered as a result of FASD. Counsel failed to investigate Mr.

6

Ritchie's exposure to toxic lead despite his history in a home at high risk for lead poisoning and despite his history of emotional and behavioral problems widely known to result from brain damage caused by lead poisoning. Doc. No. 64-1, at App.239-40, 243-44. As a result of counsel's failure, the State cast doubt upon the existence and extent of Mr. Ritchie's brain dysfunction, which could have explained his crime had counsel conducted a reasonable investigation.

Although these claims have been procedurally defaulted, Mr. Ritchie can make plausible procedural arguments in support of these claims upon reopening the judgment. *Beshear*, 474 F.2d at 132 ("We do not intend to suggest that the party moving for relief under 60(b) must show that he would prevail if a merit trial occurred but he must show facts which, if established, might reasonably be said to be a basis for recovery."). *See also Buck*, 580 U.S. at 126-27 (finding that petitioner has "good claim" because *Martinez/Trevino* provide potential excuse for procedural default of ineffective assistance claims). As Mr. Ritchie has explained in his Rule 60(b)(6) motion, he would be able to make a plausible case that he can overcome any procedural bar to having these claims heard on the merits by this Court.

Mr. Ritchie has made this motion within a reasonable time. Fed. R. Civ. Pro. 60(c)(1); *Kemp v. United States*, 596 U.S. 528, 538, 540 (2022) ("What constitutes reasonable time necessarily depends on the facts in each individual case.") (quotation omitted). Mr. Ritchie could not raise this motion during the pendency of the conflict that existed until prior counsel withdrew from the case. And, in any event, Mr. Ritchie had long been constructively abandoned by prior counsel. In *Christeson*, the Supreme Court explained that a Rule 60(b)(6) motion could still be timely in a habeas case where conflict-free counsel had

replaced the attorney who remained under a conflict of interest after missing the statute of limitations a full decade earlier. 574 U.S. at 380-81. Upon appointment, undersigned counsel needed to review the entire case, discover prior counsel's conflict of interest, investigate to find any potentially meritorious claims that could not have been previously raised due to that conflict, retain and consult with experts, advise Mr. Ritchie, and research and draft this motion. Therefore, this motion is timely under Rule 60(c)(1) because it has been filed by conflict-free counsel within a reasonable time of being appointed. *See Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016) (noting that the first step when new counsel replaces conflicted counsel under *Christeson* is to allow counsel the opportunity to investigate the case, formulate arguments conflicted counsel could have not raised, and "present the best arguments from [the petitioner's] perspective").

Finally, the extraordinary circumstances present in this case warrant reopening the judgment. "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Buck*, 580 U.S. at 123 (cleaned up). The injustice to Mr. Ritchie is grave: he is currently facing an imminent execution without having received a fair chance to petition for federal habeas relief given prior counsel's unquestionable conflict of interest. Instead of seeking to remedy the conflict, each attorney silently abandoned Mr. Ritchie altogether. Prior counsel's misconduct was a direct violation of a federal statute specifically designed to protect death sentenced inmates in two distinct ways, depriving Mr. Ritchie of his statutory right to counsel advocating on his behalf. *Cf. McFarland* 512 U.S. at 858 ("Where [the right to quality legal representation in preparing a federal habeas petition] is not afforded,

8

'approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.'"). The State's interest in finality does not outweigh these considerations given that Mr. Ritchie is simply asking for the opportunity to have his substantial constitutional claims—one of which was denied by an equally divided 2-2 vote in state court on procedural grounds—tested on the merits by at least one court before he is killed. *See Barnett v. Roper*, 941 F. Supp. 2d 1099, 1120 (E.D. Mo. 2013) (the State's interest in finality is necessarily tempered by the fact that "the claim at issue here, the ineffectiveness of trial counsel, due to failure to investigate and present mitigating evidence in the penalty phase, has never been heard on its merits, and directly implicates the reliability of Barnett's sentence."). Likewise, "the risk of undermining the public's confidence in the judicial process" weighs in Mr. Ritchie's favor because executing him despite substantial constitutional violations having gone unreviewed by any court based on his prior counsel's misconduct would create an intolerable risk that the public would lose confidence in the criminal justice system and the death penalty especially. *Buck*, 580 U.S. at 123.

b. **Mr. Ritchie will suffer irreparable injury without a stay.**

"There can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury." *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995). *See, e.g.*, *Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"). Preventing truly irreparable harm is the "main reason" for emergency relief. *See Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024). While most

9

emergency requests involve harm that "does not rise to that level" of being wholly irreparable, in the rare cases like this one—where one party will literally "kill the other party" and thereby "moot [the] case" absent temporary equitable relief—the weight of the irreparable-injury prong is at its peak. *Id.*

  c. **The balance of equities tips in Mr. Ritchie's favor.**

Although the State and victims generally have a strong interest in the enforcement of a criminal judgment that is relevant to issuing temporary relief, "this is not a case in which [the inmate] slept upon his rights." *Ramirez v. Collier*, 595 U.S. 411, 435 (2022). Despite prior counsel's conflict of interest, they stayed on the case before eventually abandoning Mr. Ritchie. In 2012, Cleary took a new job that precluded him from representing Mr. Ritchie, *Maples*, 565 U.S. at 284, and, in 2024, admitted that he has not "substantively" represented Mr. Ritchie in years. Doc. No. 64-1, at App.304. In 2016, Westerfeld stopped working on the case entirely after losing on appeal. Doc. No. 64-1, at App.303. Therefore, by some point in 2016, Mr. Ritchie, without his knowledge, was constructively abandoned by both attorneys who still ostensibly represented him in this Court and in state court. Mr. Ritchie had no reason to believe that he had been constructively abandoned—his attorneys told him otherwise, Doc. No. 64-1, at App.304 ¶ 5, and they had been appointed under a statute that required them to continue to represent him indefinitely, *see* 18 U.S.C. § 3599(e) ("Unless replaced by similarly qualified counsel . . . or upon motion, each attorney so appointed shall represent the defendant throughout every subsequent [stage of proceedings]"); *cf. Battaglia v. Stephens*, 824 F.3d 470, 472 (5th Cir. 2016) (finding substitution appropriate because prior counsel abandoned the client despite the statutory duty "to represent a capital defendant . . . until a court of competent jurisdiction grants a motion to withdraw."). It was not until ten

10

days before the State moved to execute Mr. Ritchie that prior counsel moved to withdraw as his counsel in this Court. Only at this point could Mr. Ritchie seek Rule 60(b)(6) relief through conflict-free counsel, which he has done with utmost dispatch. *Christeson*, 574 U.S. at 380-81.

Therefore, Mr. Ritchie's irreparable harm—that he will be executed without having received a fair chance to petition for federal habeas relief due to prior counsel's conflict of interest—outweighs the State's temporary injury. *Cf. In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003) ("[C]ontrary to the State's contention that its interest in executing Holladay outweighs his interest in further proceedings, we perceive no substantial harm that will flow to the State of Alabama or its citizens from postponing petitioner's execution to determine whether that execution would violate the Eighth Amendment.").

### d. The public interest weighs strongly in favor of a stay.

Staying Mr. Ritchie's execution is necessary to vindicate the federal statutory right to conflict-free counsel in federal habeas. The public interest supports equitable relief that will prevent the frustration of a statutory right. *See Ramirez*, 595 U.S. at 433 ("By passing RLUIPA, Congress determined that prisoners like Ramirez have a strong interest in avoiding substantial burdens on their religious exercise, even while confined."). "The fact that Congress has indicated its purpose . . . is in itself a declaration of public interest and policy which should be persuasive in inducing courts to give relief." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). As such, "[i]n considering the propriety of the equitable relief, [this Court] cannot ignore the judgment of Congress, deliberately expressed in legislation." *Id*.

Congress enacted 18 U.S.C. § 3599 to ensure the "mandatory right to qualified legal counsel in [federal habeas] proceedings" for death-sentenced inmates. *Christeson*, 574 U.S. at 377 (quoting *McFarland v. Scott*, 512 U.S. at 859).[2] "By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *McFarland*, 512 U.S. at 859. In light of Congress's policy decision, the Supreme Court has repeatedly recognized that the denial of federal capital habeas counsel, whether actual or constructive, is grounds for equitable relief. *See, e.g.*, *Christeson*, 574 U.S. at 381 (staying execution and allowing petitioner opportunity to pursue Rule 60(b)(6) relief based on initial federal habeas counsel's conflict of interest); *McFarland* 512 U.S. at 858 ("Where [the right to quality legal representation in preparing a federal habeas petition] is not afforded, approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper.") (cleaned up).

This Court must take the public interest arising from Congress's determinations in § 3599 into account in weighing Mr. Ritchie's stay request. Mr. Ritchie was constructively denied counsel during federal habeas proceedings because they developed a conflict of interest. *Christeson*, 574 U.S. at 379 (when counsel develops a conflict, the petitioner "effectively has no counsel at all.") (cleaned up). This violation of § 3599 was compounded

---

[2] Although *McFarland* dealt with a prior iteration of the statute, Congress's recodification under § 3599 actually "enhanced" capital petitioners' "rights of representation" in light of "the seriousness of the possible penalty and the unique and complex nature of the litigation." *Martel v. Clair*, 565 U.S. 648, 659 (2012) ("[T]he statute aims in multiple ways to improve the quality of representation afforded to capital petitioners.") (cleaned up).

12

when both attorneys abandoned Mr. Ritchie, despite their statutory obligation to remain on the case and advocate on his behalf. *See* § 3599(e). *See also Battaglia*, 824 F.3d at 472 ("[A] lawyer appointed to represent a capital defendant is obligated to continue representing his client until a court of competent jurisdiction grants a motion to withdraw[.]").

Moreover, the public interest also supports procedures that ensure accuracy, trustworthiness, and fairness in the criminal justice system, especially in death penalty cases. *See Rosales-Mireles v. United States*, 585 U.S. 129, 141 (2018) ("[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair, and that provide opportunities for error correction.'") (cleaned up). "[A] sentence that lacks reliability because of unjust procedures may well undermine public perception of the proceedings." *Id.* at 144 (citation omitted). Therefore, the public has an interest in this Court staying the case so that it can receive the scrutiny that is required in every capital case. *See California v. Ramos*, 463 U.S. 992, 998–99 (1983) (The Supreme Court "has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny."); *Cooey v. Bradshaw*, 216 F.R.D. 408, 417 (N.D. Ohio 2003) ("The function of federal habeas corpus . . . is to ensure the integrity of a state's judicial process, particularly when that may culminate in a defendant's execution. It is our responsibility as federal judges to ensure the integrity of our own process, and that is why I have stayed Cooey's execution.").

Finally, it cannot be ignored that Mr. Ritchie is pursuing Rule 60(b) relief so that he may have the opportunity to vindicate his Sixth Amendment right to counsel. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) ("[I]t is always in the public interest to prevent the violation of a party's constitutional

13

rights.") (cleaned up). Because of prior counsel's conflict of interest during initial federal habeas proceedings, Mr. Ritchie will otherwise never have the opportunity to raise the substantial constitutional claims he would have been able to raise through conflict-free counsel during his initial habeas proceeding. *See Phelps v. Alameida*, 569 F.3d 1120, 1140 (9th Cir. 2009) ("[A] central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard."); *Ruiz v. Quarterman*, 504 F.3d 523, 531–32 (5th Cir. 2007) ("The main application of Rule 60(b) is to those cases in which the true merits of a case might never be considered.") (cleaned up).

### III.  Conclusion.

For these reasons, Mr. Ritchie respectfully requests that the Court stay his execution pending its consideration of his Rule 60(b)(6) motion.

Respectfully submitted,

/s/ Daniel Lawless
Shawn Nolan
Daniel Lawless
Capital Habeas Unit
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545-West
Philadelphia, PA 19106
(215) 928-0520
shawn_nolan@fd.org
daniel_lawless@fd.org

Dated: May 7, 2025                     *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Southern District of Indiana by using the CM/ECF system. Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Service has also been provided to counsel for Respondent, Jesse R. Drum, jesse.drum@atg.in.gov, and Tyler Banks, tyler.banks@atg.in.gov, via electronic mail.

/s/ Daniel Lawless
Daniel Lawless