UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BENJAMIN RITCHIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:08-cv-00503-RLY-MJD |
| | ) | |
| RON NEAL, | ) | |
| | ) | |
| Respondent. | ) | |

**Order Denying Motion to Stay Execution
and Granting Certificate of Appealability**

Benjamin Ritchie is an Indiana state prisoner scheduled for execution before sunrise at

Indiana State Prison on May 20, 2025. He was sentenced to death in 2002 for the murder of police

officer William Toney. He unsuccessfully pursued a direct appeal, state post-conviction relief,

federal habeas relief before this court, and most recently was unable to convince a majority of the

Indiana Supreme Court to authorize the filing of a successive petition for post-conviction relief.

Mr. Ritchie now files a motion for relief from judgment in this court, under Fed. R. Civ. P.

60(b)(6), from its denial of his habeas petition under 28 U.S.C. § 2254. Dkt. 64. He has

contemporaneously filed a motion to stay execution.[1] Dkt. [65]. For the reasons below, the court

**DENIES** the motion to stay. The court also addresses whether a certificate of appealability should

issue from this order and concludes that one should issue.

---

[1] Mr. Ritchie's state attorneys have also filed a motion to stay execution with the United States Supreme Court, in conjunction with filing a petition for certiorari challenging the Indiana Supreme Court's denial of permission to seek successive post-conviction relief. *Ritchie v. Indiana*, No. 24A1077. As of the signing of this order, the Supreme Court has not yet ruled on that motion. On May 14, 2025, Indiana Governor Mike Braun accepted the unanimous recommendation of the Indiana Parole Board to not commute Mr. Ritchie's death sentence.

# I. Background

## A. Mr. Ritchie's Crimes

On direct appeal, the Indiana Supreme Court described Mr. Ritchie's crimes as follows:

> On September 29, 2000, around 7:00 p.m., Ritchie and two others stole a white Chevrolet Astro van from a gas station in Beech Grove. The theft was reported and police were dispatched to the scene where Beech Grove police officer Matt Hickey filed a stolen vehicle report. Approximately two hours later, Hickey was en route to a traffic accident scene and recognized the stolen van as Ritchie and one of his accomplices drove by. After confirming by radio that the van bore the license plate of the stolen vehicle, Hickey pursued, joined by officers Robert Mercuri and William Toney. After a short chase, the van pulled into the yard of a residence where Ritchie and his companion jumped out and ran in opposite directions. Officer Toney pursued Ritchie on foot, and ultimately Ritchie turned and fired four shots, one of which struck Toney in the chest. Toney died at the scene.

*Ritchie v. State*, 809 N.E.2d 258, 261 (Ind. 2004) (*Ritchie I*).

## B. Procedural History

### 1. Trial and Sentencing

At trial, Mr. Ritchie was represented by Jack Crawford and Kevin McShane. Dkt. 64-1 at 86. At the sentencing phase of trial, Mr. Crawford and Mr. McShane presented evidence and argument regarding Mr. Ritchie's mother's alcohol and substance abuse during her pregnancy. They also presented the testimony of clinical neuropsychologist Michael Gelbort, PhD. Dr. Gelbort testified that, based on neuropsychological testing, Mr. Ritchie had Cognitive Disorder Not Otherwise Specified. Dkt. 64 at 30 (citing Trial Tr. 2499). Dr. Gelbort also testified that this diagnosis meant "there's something demonstrably wrong with the way his cognition or thinking skills work but it doesn't really pin them down." *Id.* There was some discussion of whether Mr. Ritchie might suffer from Fetal Alcohol Spectrum Disorder ("FASD"), as there was evidence of his mother having abused alcohol while she was pregnant. *Id.* at 31. Dr. Gelbort testified that

2

he was not an expert regarding FASD and could not diagnosis that Mr. Ritchie had it, but he did refer to his mother's substance abuse during pregnancy as probably contributing to his cognitive problems. *Id.* In closing, the prosecutor argued that there was no evidence that Mr. Ritchie had FASD. *Id.*

The jury found Mr. Ritchie guilty of murder and other offenses and recommended imposition of the death penalty, and the judge imposed it. *Ritchie I*, 809 N.E.2d at 261. On direct appeal, the Indiana Supreme Court held that (1) Indiana's death penalty statute did not violate the Indiana and United States Constitutions; (2) Indiana's method of execution did not violate the Eighth Amendment's ban on cruel and unusual punishment; (3) Indiana's death penalty statute in effect at the time of Mr. Ritchie's sentencing was not an improper *ex post facto* law; (4) the jury's weighing of aggravating and mitigating circumstances was proper and did not violate the Sixth Amendment; (6) Indiana Trial Rule 59(J)(7) did not apply to the jury's death penalty recommendation; (7) the trial was not tainted by prosecutorial misconduct; (8) there was sufficient evidence to sustain the murder conviction; and (8) a juror's post-trial note expressing displeasure with one of Mr. Ritchie's attorneys did not warrant a new trial. *Id.* at 261-71. Mr. Ritchie's convictions and sentence were affirmed.

### 2. Post-Conviction Relief Proceedings

In 2005, Mr. Ritchie filed a state post-conviction relief ("PCR") petition. He was now represented by attorneys Joseph Cleary and Brent Westerfeld. In part, Mr. Cleary and Mr. Westerfeld argued that Mr. Ritchie had received ineffective assistance of counsel during the sentencing phase of trial because Mr. Crawford and Mr. McShane should have done "a better job in presenting evidence of mitigation." *Ritchie v. State*, 875 N.E.2d 706, 719 (Ind. 2007) (*Ritchie II*). Specifically, Mr. Cleary and Mr. Westerfeld argued (1) trial counsel should have contacted

teachers and school personnel to discuss Mr. Ritchie's troubled childhood after he had been adopted; (2) trial counsel should have directed their mitigation specialist to prepare a "social history report" summarizing Mr. Ritchie's troubled childhood; and (3) trial counsel should have obtained other psychological experts to testify in addition to Dr. Gelbort. *Id.* at 719-22.

Regarding the third issue, Mr. Cleary and Mr. Westerfeld contended that (1) trial counsel should have called a psychiatrist to testify who had treated Mr. Ritchie as an inpatient following an attempted suicide attempt several years earlier; and (2) trial counsel should have procured other psychological experts to testify on Mr. Ritchie's behalf to show that he actually suffered from bipolar disorder. *Id.* at 723. Mr. Cleary and Mr. Westerfeld presented testimony at the PCR hearing from a forensic psychologist, Dr. Robert Kaplan, who believed Mr. Ritchie did have that condition. "Dr. Kaplan was unable to specifically identify the cause but only speculated genetic factors or early childhood abuse, neglect, substance abuse, or abandonment could be to blame." *Id.*

The PCR court denied relief to Mr. Ritchie, except for vacating one misdemeanor resisting law enforcement conviction on double jeopardy grounds. *Id.* at 713 n.5. The Indiana Supreme Court affirmed the PCR court's ruling in its entirety. Regarding trial counsel's failure to present more psychological mitigating evidence for Mr. Ritchie, the Court held that "[a]dding cumulative evidence to Dr. Gelbort's testimony would not lead to a reasonable probability that the jury would have recommended a sentence other than death" and "[t]he ability of post-conviction counsel to locate and present expert opinion disagreeing with the psychiatric evidence at trial does not lead necessarily to the conclusion of counsel's ineffectiveness." *Id.* at 722-23.

### 3. Habeas Corpus Proceedings

On July 21, 2008, Mr. Ritchie—still represented by Mr. Cleary and Mr. Westerfeld—filed a petition for habeas corpus relief in this court under 28 U.S.C. § 2254. Dkt. 11. The petition argued

in part, and extensively, that trial counsel had been ineffective during the penalty phase of trial with respect to investigation and presentation of mitigating evidence. Dkt. 11 at 11-18. In sum, Mr. Cleary and Mr. Westerfeld argued that the Indiana Supreme Court unreasonably applied federal law when rejecting Mr. Ritchie's ineffective assistance claims.

On May 23, 2014, the court issued an order denying Mr. Ritchie's habeas petition in its entirety. Dkt. 32 (*Ritchie III*). Regarding the sentencing mitigation and mental health claims, this court stated:

> Ritchie's ineffective assistance of counsel claim relating to the penalty phase of his trial boils down to a contention that his counsel did not present enough mitigating evidence. "[S]uch arguments come down to a matter of degrees, which are ill-suited to judicial second-guessing." *Woods v. McBride*, 430 F.3d 813, 826 (7th Cir. 2005) (citing *Conner v. McBride*, 375 F.3d 643, 666 (7th Cir. 2004)). The Indiana Supreme Court's rejection of these arguments was a reasonable application of *Strickland* to the facts of the case.

*Id.* at 13.

On March 30, 2015, the court denied Mr. Ritchie's motion to alter or amend judgment. Dkt 38. On December 22, 2015, the court denied his request for a certificate of appealability. Dkt. 48. On July 15, 2016, the Seventh Circuit issued its mandate affirming the denial of a certificate of appealability. Dkt. 53. On April 17, 2017, the Supreme Court denied Mr. Ritchie's certiorari petition. *Ritchie v. Indiana*, No. 16-7101 (U.S.).

### 4. Subsequent Proceedings

On September 27, 2024, the State of Indiana ("the State") filed a motion with the Indiana Supreme Court requesting that it set an execution date for Mr. Ritchie as required by law. Dkt. 64-1 at 4. The motion noted in part that Mr. Ritchie "has never alleged he suffers from a mental disease or defect that prevents him from understanding court proceedings, assisting his counsel, or apprehending the justification for his sentence." *Id.* at 7. Justice Massa recused from any

proceedings regarding Mr. Ritchie because of his participation in the original prosecution. *Id.* at 77.

On November 1, 2024, Mr. Ritchie, through the Public Defender of Indiana ("State PD"), filed a motion with the Indiana Supreme Court requesting he be allowed to file a successive PCR petition. *Id.* at 27. In part, the motion asserted that "[b]oth trial and post-conviction counsel failed to recognize red flags in Ritchie's mother's disclosure of alcohol abuse and in Ritchie's mental health and school records." *Id.* at 40. Attached to the motion were opinions from four experts opining that Mr. Ritchie likely does in fact have FASD. *Id.* The State PD also argued, "[t]he impairments attributable to an FASD establish a cause for Ritchie's behavior. The causes and extent of the impairments also constitute strong mitigating evidence which was not presented by the trial attorneys." *Id.* The State PD further contended that evidence of Mr. Ritchie's childhood lead poisoning had been "underdeveloped" in previous state proceedings. *Id.* at 43.

Also, Mr. Westerfeld submitted an affidavit stating in part:

> 4. Mr. Ritchie was provided inadequate post-conviction representation because we failed to investigate a claim of ineffective assistance of trial counsel for failure to present evidence to Benjamin Ritchie's jury and trial judge that was both evident and likely to succeed.
>
> 5. It was our mistaken belief that a Fetal Alcohol Spectrum Disorder is only present if there are physical abnormalities.
>
> 6. We now recognize that had a brain scan been taken, as requested by our expert, the result would have likely shown significant developmental abnormalities that would have given the context required for the jury to understand the entirety of Mr. Ritchie's mitigation presented to the jury and the post-conviction court.

*Id.* at 65-66. The State PD argued that Mr. Cleary and Mr. Westerfeld provided ineffective assistance of post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012), and also that Indiana's current standard for evaluating effectiveness of counsel in post-conviction proceedings,

as defined by *Baum v. State*, 533 N.E.2d 1200 (Ind. 1989), is inadequate especially in capital cases and should be revisited.[2]

On April 15, 2025, the Indiana Supreme Court denied Mr. Ritchie's request to pursue successive PCR by a 2-2 vote and set an execution date of May 20, 2025. *Ritchie v. State*, 254 N.E.3d 1064 (Ind. 2025) (*Ritchie IV*). Chief Justice Rush and Justice Goff dissented from the denial of allowing Mr. Ritchie to seek successive PCR, both of whom believed Mr. Ritchie should have been allowed to pursue his claims related to FASD. Justice Goff also wanted to revisit the *Baum* standard. The Indiana Supreme Court denied rehearing on April 30, 2025.

The State PD has filed a petition for certiorari with the Supreme Court, arguing that the two Indiana Supreme Court justices who voted against Mr. Ritchie had improperly relied on the *Baum* standard instead of the *Martinez* standard in rejecting any claim that Mr. Cleary and Mr. Westerfeld had provided ineffective assistance of post-conviction counsel. *Ritchie v. Indiana*, No. 24-7157 (U.S.).

### 5. Mr. Cleary's and Mr. Westerfeld's Representation of Mr. Ritchie

As noted, Mr. Cleary and Mr. Westerfeld represented Mr. Ritchie during his state post-conviction relief proceedings and filed and litigated his habeas corpus petition with this court. In 2012, while the habeas proceedings were ongoing, Mr. Cleary left private practice and began working at the Indiana Federal Community Defender Office ("IFCD"). Dkt. 64 at 20. Thereafter, he did not withdraw his appearance before this court and continued to be listed as an attorney of record on filings with this court. *See, e.g.*, dkt. 40 (April 29, 2015, motion for certificate of appealability). Mr. Cleary's position at IFCD prohibited him from "engaging in the practice of law"

---

[2] *Baum* holds that the *Strickland* ineffective assistance standard does not apply to post-conviction counsel. Rather, counsel need only represent "the petitioner in a procedurally fair setting which resulted in a judgment of the court . . . ." *Baum*, 533 N.E.2d at 1201.

or "engaging in the practice of law outside the scope of his . . . official duties . . . ." Dkt. 64-1 at 316-17.

Mr. Westerfeld's last act on behalf of Mr. Ritchie was filing the certiorari petition with the Supreme Court on December 5, 2016. On September 17, 2024, Mr. Cleary filed a motion to withdraw, followed by Mr. Westerfeld's motion on September 18, both of which motions were granted. Dkts. 56, 57, 58, 59. On October 10, 2024, the court granted the motion of the Federal Community Defender Office for the Eastern District of Pennsylvania to represent Mr. Ritchie in these proceedings. Dkt. 60.

### 6. Current Proceedings

Mr. Ritchie, by new counsel, filed a Rule 60(b)(6) motion for relief from judgment and a motion for stay of execution with this court on May 7, 2025. Dkts. 64, 65. An appendix is attached to the Rule 60(b) motion, which includes all of the filings and evidence submitted by the State PD in support of seeking permission to pursue successive PCR, plus two new reports from experts, not previously disclosed by the State PD, discussing Mr. Ritchie and the likelihood that he has FASD. Dkt. 64-1 at 329-431. The 60(b) motion asserts that Mr. Cleary and Mr. Westerfeld provided ineffective assistance of counsel during the state PCR proceedings by failing to argue (or adequately argue) and present evidence on whether trial counsel unreasonably failed to investigate and present evidence of Mr. Ritchie's alleged FASD and childhood lead poisoning, particularly with respect to the sentencing phase of trial. Dkt. 64 at 2. The court ordered briefing on the motion to stay, to be completed by May 15, 2025, at noon. Dkt. 67. This matter is now ripe for ruling.

### II. Discussion

A motion for stay of execution requires the court to consider the same factors that apply when deciding whether to issue a preliminary injunction. *Ramirez v. Collier*, 595 U.S. 411, 421

(2022). The standard for granting such a motion is "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). A stay of execution is an "equitable remedy" that "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).

## A. Likelihood of Success on the Merits

### 1. *Martinez-Trevino* (and *Brown*)

Mr. Ritchie essentially concedes that the claims he now seeks to bring regarding trial counsel's effectiveness would ordinarily be considered procedurally defaulted. Under § 2254, a petitioner may not raise a claim in federal court that has been procedurally defaulted. Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). *See also Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) ("If a habeas petitioner has not exhausted a claim, and complete exhaustion is no longer available, the claim is procedurally defaulted."). Procedural default also may occur if a state court rejected a federal claim based on a state procedural rule "that is both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*,

845 F.3d 816, 819 (7th Cir. 2017) (internal citations omitted). Procedural default may be excused if a habeas petitioner can show "cause for the default and resulting prejudice, or by showing he is actually innocent of the offense."[3] *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017).

In *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), the Supreme Court established the general rule that an attorney's errors in a post-conviction proceeding will not establish "cause" for excusing procedural default of an issue in a subsequent habeas proceeding under § 2254. Then, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved out a "narrow" exception to *Coleman*. Specifically, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 17. If an attorney represented the petition in the initial collateral proceeding, a habeas petitioner may avoid procedural default of an ineffective assistance of trial counsel claim if he makes a showing that the underlying ineffective-assistance-of-trial-counsel claim "has some merit" and that collateral-review counsel provided ineffective assistance under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 14.

In *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), the Supreme Court expanded the *Martinez* rule to include states where a claim of ineffective assistance of counsel may "in theory" be raised on direct appeal, "but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so . . . ." The *Trevino* opinion specifically analyzed Texas's post-conviction relief system and concluded that it did "not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 428. In dissent, Chief Justice

---

[3] Mr. Ritchie does not argue that he is actually innocent.

Roberts asserted that the majority's rule was inadvisable because it would require "endless . . . state-by-state litigation" to determine whether a state's post-conviction system falls under *Trevino*. *Id.* at 433 (Roberts, C.J., dissenting).

In *Brown*, the Seventh Circuit addressed for the first time whether *Martinez-Trevino* applies to Indiana's post-conviction relief system. It noted that Chief Justice Roberts had "predicted accurately a long process of state-by-state litigation on applying *Trevino*." 847 F.3d at 509. After considering that Indiana state defendants may technically raise a claim of ineffective assistance of trial counsel on direct appeal but are strongly encouraged by courts and litigators to instead pursue such claims on post-conviction relief, the Seventh Circuit held that "[t]he *Martinez-Trevino* form of cause to excuse procedural default is available to Indiana defendants who seek federal habeas relief." *Id.* at 512-13.

### 2. Availability of Relief Through Rule 60(b)

A threshold issue is whether it is appropriate to seek to set aside this court's judgment under Rule 60(b), or whether Mr. Ritchie is required to seek permission from the Seventh Circuit to file a successive habeas corpus petition under 28 U.S.C. § 2244(b). Generally, a Rule 60(b) motion that attacks a court's "previous resolution of a claim *on the merits*" must be treated as a successive § 2254 motion. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). "[A] Rule 60(b) motion based on a purported change in the substantive law governing the claim could be used to circumvent § 2244(b)(2)(A)'s dictate that the only new law on which a successive petition may rely is 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* at 531-32.

However, "Rule 60(b) has an unquestionably valid role to play in habeas cases." *Id.* at 534. "If neither the motion itself nor the federal judgment from which it seeks relief substantively

addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id.* at 533. In *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015), the Seventh Circuit held that an alleged *Martinez-Trevino* issue with counsel's performance on federal collateral review could be raised through a 60(b) motion under *Gonzalez*, rather than a pre-approved successive collateral petition.[4] That is because, like here, a claim that federal habeas counsel's representation of the petitioner in prior collateral proceedings prevented them from raising a *Martinez-Trevino* ineffective assistance claim against themselves attacks the "integrity" of the federal habeas proceeding itself, rather than the merits of an underlying claim. *Id.* at 856. *See also Clark v. Davis*, 850 F.3d 770, 779-80 (5th Cir. 2017) (holding Rule 60(b) motion was not a successive habeas petition because it attacked "not the substance of the federal court's resolution of the claim of the merits, but asserts that [habeas counsel] had a conflict of interest that resulted in a defect in the integrity of the proceedings").

Mr. Ritchie frames his 60(b) motion as one challenging Mr. Cleary's and Mr. Westerfeld's performance in the federal habeas proceedings as deficient because they had a conflict of interest under *Martinez-Trevino*. That is, they could not realistically or ethically challenge their own performance as state PCR counsel in litigating the claim that trial counsel were ineffective—a claim that *Brown* established is governed by *Martinez-Trevino*. Erring on the side of caution, and in light of *Ramirez*, the court concludes that Mr. Ritchie's 60(b) motion need not be treated as an improper, unapproved successive habeas petition.

---

[4] *Ramirez* also incorporated the *Martinez-Trevino* framework into the context of federal conviction collateral proceedings under 28 U.S.C. § 2255. 799 F.3d at 854.

### 3. Rule 60(b)(6) Standard

Mr. Ritchie specifies that he is seeking relief from judgment under Federal Rule of Civil Procedure 60(b)(6). The State does not argue that a different subsection of that Rule should apply. Rule 60(b)(6) allows a court to reopen a judgment for "any other reason that justifies relief," when subsections (1)-(5) of the Rule would not apply. Such relief is available only in "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535. A court may consider a wide range of factors in determining whether to set aside judgment, including "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, 580 U.S. 100, 122 (2017) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988)). "Rule 60(b) vests wide discretion in courts . . . ." *Id.*

In addition to "extraordinary circumstances," a Rule 60(b)(6) movant must show that the motion was filed within a "reasonable time" under Rule 60(c). *Kemp v. United States*, 596 U.S. 528, 531-32 (2022). To determine whether an "unreasonable" amount of time has passed, a court must balance a number of factors, including the interest in finality of judgments, the reasons for delay, the ability of the petitioner to learn earlier about the grounds relied upon in a 60(b)(6) motion, and prejudice to parties. *Shakman v. City of Chicago*, 426 F.3d 925, 933-34 (7th Cir. 2005). "There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." *Sudeikis v. Chi. Transit Auth.*, 774 F.2d 766, 769 (7th Cir. 1985). Whether a delay represents an unreasonable amount of time is fact specific. *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986). A delay of even a few months in filing a motion after learning of new information may be unreasonable. *See, e.g., id.* (three-and-a half months); *United States v. Moorehead*, 321 F. App'x 512 (7th Cir. 2009) (five months after

finding out new information, two years after judgment). When a judgment has been final for years prior to the motion, "the interest in finality militates affirming the dismissal of the petition." *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004).

### 4. Mr. Ritchie's 60(b)(6) Motion Was Not Filed Within a Reasonable Time

Even assuming the decisions in *Martinez-Trevino* could constitute "extraordinary circumstances" possibly warranting relief from judgment, the court concludes that the current 60(b)(6) motion was not filed with a "reasonable time."

The main thrust of Mr. Ritchie's argument as to why his 60(b)(6) motion was filed within a "reasonable time" is that he was effectively precluded from making any *Martinez-Trevino* arguments so long as Mr. Cleary and Mr. Westerfeld continued to be his attorneys of record in this court. Therefore, the "reasonable time" to file such a motion only began when new counsel were appointed for Mr. Ritchie on October 10, 2024, and this motion filed eight months later is timely due to the complexity of researching and drafting a motion such as this in a capital case.

Mr. Ritchie cites and discusses a number of cases that he argues compels the conclusion that he was effectively abandoned by Mr. Cleary and Mr. Westerfeld, which should excuse most of the delay in filing the current motion—i.e., the time until they withdrew and were replaced. As Mr. Ritchie notes, under 18 U.S.C. § 3599(e), appointed counsel in a federal habeas capital case "shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures . . . ." However, this open-ended representation may be terminated if counsel is "replaced by similarly qualified counsel upon the attorney's own motion *or upon motion of the defendant* . . . ." *Id.* (emphasis added).

The post-*Martinez* cases upon which Mr. Ritchie relies, regarding replacement of "conflicted" counsel under that case's rule, were instances in which there was a motion to replace counsel. In *Christeson v. Roper*, 574 U.S. 373, 377 (2015), the Supreme Court held that a § 3599(e) motion to substitute counsel in a federal habeas proceeding should be granted when it is in the interests of justice to do so. The Court remanded for substitute counsel to be appointed for a § 2254 capital petitioner, several years after his habeas petition had been dismissed, for purposes of filing a Rule 60(b) motion to set aside the judgment. *Id.* at 380. The Court noted, in part, that substitute counsel had only requested 90 days to file such a motion, and that the petitioner would face "a host of procedural obstacles to having a federal court consider his habeas petition." *Id.* And, in fact, on remand his Rule 60(b) motion filed by substitute counsel was denied. *Christeson v. Griffith*, 860 F.3d 585 (8th Cir. 2017).

In *Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015), the court granted the habeas petitioner's motion for supplemental counsel under § 3599 to address *Martinez-Trevino* claims. In *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013), the court held that "if a federal habeas petitioner is represented by the same counsel as in state habeas proceedings, *and the petitioner requests independent counsel* in order to investigate and pursue claims under *Martinez* in a state where the petitioner may only raise ineffective assistance claims in an 'initial-review collateral proceeding,' qualified and independent counsel is ethically required." (emphasis added). In *Battaglia v. Stephens*, 824 F.3d 470, 473-74 (5th Cir. 2016), the court held that a motion to substitute counsel under § 3599 should have been granted.

Mr. Ritchie also cites to *Maples v. Thomas*, 565 U.S. 266 (2012), decided before *Martinez*. In that case, the Supreme Court held that a habeas petitioner had effectively been "abandoned" by counsel, where none of his three appointed attorneys were actively representing him during the

time period when he needed to file a state-level appeal, resulting in forfeit of the appeal. Therefore, there was "cause" to excuse procedural default of the petitioner's claims. *Id.* at 288-89. "[A] client cannot be charged with the acts or omissions of an attorney who abandoned him." *Id.* at 283. Specifically, two of his attorneys of record left the law firm where they worked and took other employment that precluded them from representing the petitioner. *Id.* at 283-84. His third attorney had told the other two attorneys that he would not handle any substantive issues in the case and had only "minimal participation" in the case. *Id.* at 287. Under these circumstances, the petitioner was "left without any functioning attorney of record." *Id.* at 288. *See also Mackey v. Hoffman*, 682 F.3d 1247, 1253 (9th Cir. 2012) ("when a federal habeas petitioner has been inexcusably and grossly neglected by his counsel in a manner amounting to attorney abandonment in every meaningful sense that has jeopardized the petitioner's appellate rights, a district court may grant relief pursuant to Rule 60(b)(6).").

Mr. Ritchie does not cite any authority for the proposition that the mere possibility of a *Martinez-Trevino* conflict of interest results in an automatic or constructive "abandonment" of a habeas petitioner by counsel. And, especially with respect to Mr. Westerfeld, there is no indication that he did in fact abandon Mr. Ritchie.[5] After this court denied the thoroughly-briefed § 2254 petition, Mr. Westerfeld filed a timely motion to amend judgment under Fed. R. Civ. P. 59, followed by a timely request for a certificate of appealability, followed by a timely appeal to the Seventh Circuit (including a request for rehearing en banc), followed by a timely petition for certiorari to the Supreme Court. This was not abandonment. *See In re Edwards*, 865 F.3d 197, 206 (5th Cir. 2017) ("It is difficult to see abandonment here, where [habeas counsel] missed no

---

[5] The court need not address whether Mr. Cleary's leaving private practice and beginning work at IFCD during the pendency of these proceedings resulted in "abandonment" of Mr. Ritchie. It is clear that Mr. Westerfeld, at least, remained active in representing Mr. Ritchie.

deadlines and filed substantive arguments."). Nor does Mr. Ritchie cite any authority for the proposition that the mere possibility of a *Martinez-Trevino* conflict of interest should result in a post-judgment sua sponte disqualification and substitution of habeas counsel. Also, it does not appear *Martinez-Trevino* automatically precludes state collateral-review counsel and federal habeas counsel from being one and the same, even if a trial counsel ineffectiveness claim had been raised in state court.

By contrast, in *Clark*, the 5th Circuit addressed a scenario very much like that before the court today – except that the time frame involved was much shorter.[6] Specifically, in that case the petitioner, who had been sentenced to death in Texas, was represented by the same attorney in both state collateral proceedings and in the subsequent § 2254 proceedings. In part, the § 2254 petition challenged trial counsel's effectiveness. After the § 2254 petition was denied and after the Supreme Court denied certiorari, habeas counsel filed a motion to withdraw, which was granted, and new counsel was appointed. Counsel filed a motion to set aside under Rule 60(b)(6). This motion was filed approximately 16 months after the Supreme Court decided *Trevino*, directly applying the *Martinez* framework to Texas, and a year after the petitioner had been appointed a new attorney in ongoing state-court proceedings. The motion was based on the original habeas attorney's alleged conflict of interest under *Trevino* and that he had been ineffective during the habeas proceedings.

Although the Fifth Circuit held that a Rule 60(b)(6) motion was appropriate in this context, as opposed to seeking permission to file a successive habeas petition, the appellate court held that the motion nonetheless was not filed within a reasonable time and was properly denied by the

---

[6] In fact, the central issue in *Clark* also was whether the petitioner suffered from FASD, and whether trial counsel was ineffective for not investigating and presenting evidence to that effect during the penalty phase of the petitioner's trial. *Clark*, 850 F.3d at 777.

district court. *Clark*, 850 F.3d at 781-82. The court stated that "the touchstone for Clark's Rule 60(b) motion, which is that [habeas counsel] had a conflict of interest, came into existence on May 28, 2013, the date of the *Trevino* decision." 850 F.3d at 781.

Next, it agreed with the district court that "Rule 60(c) timeliness requirements are not reset every time a litigant obtains a new attorney." *Id.* at 782. "The *Trevino* decision had been extant for twelve months, since May 2013, by the time that Clark asked the federal district court to substitute new counsel for [habeas counsel]. Clark's Rule 60(b) motion did not explain why he did not seek new counsel in the federal district court sooner than he did. The date that the federal district court permitted new counsel to appear should not be the starting point for measuring timeliness of the Rule 60(b)(6) motion in this case." *Id.* The court further observed that a nine-month period during this time, when state attorneys were pursuing state habeas relief on the petitioner's behalf, was not excluded from the Rule 60(b)(6) calculus. *Id.* at 783. "Clark could have made concurrent state and federal filings . . . ." *Id.* Finally, the court adopted its reasoning from an earlier unpublished case, which rejected the proposition that "as a long as a conflicted attorney remained his counsel, there were no grounds for filing a Rule 60(b) motion . . . ." *Id.* (citing *In re Paredes*, 587 F. App'x 805 (5th Cir. 2017)).

This court finds the Fifth Circuit's reasoning to be sound. Otherwise, *Martinez-Trevino* could be utilized to indefinitely extend the deadline for filing a Rule 60(b)(6) motion to vacate a habeas judgment, so long as it can be framed as a challenge to habeas counsel's "conflict of interest" in relation to an ineffective assistance claim. Thus, here, the court concludes that the beginning point for calculating the timeliness of Mr. Ritchie's Rule 60(b)(6) motion is no later than the date the Seventh Circuit decided *Brown*, definitively applying *Martinez-Trevino* to Indiana, which was February 1, 2017. Alternatively, the time period might have begun to run when the

18

Supreme Court denied certiorari in this case, on April 17, 2017. Either way, this motion was filed over eight years later. That is extremely belated and unreasonable.

Counsel for Mr. Ritchie suggest that, in part because of his FASD and child lead poisoning, he is "cognitively impaired" and could not have been expected to request substitution of counsel, or take any action on his own behalf, any earlier than what actually occurred here. Dkt. 74 at 9. The court stresses that there is no argument before the court that his execution would violate the standards of *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that execution of "mentally retarded" persons is barred by the Eighth Amendment). Nor is there any argument that Mr. Ritchie lacked competency to be tried or to assist in his own defense at any stage of the proceedings under *Dusky v. United States*, 362 U.S. 402 (1960), and its progeny. Courts regularly place some onus on pro se habeas petitioners to be aware of the law and legal procedures. Namely, "ignorance of the law" does not excuse late or non-compliant habeas filings unless a state has created or maintained an impediment to a petitioner's acquiring necessary information. *See Famous v. Fuchs*, 38 F.4th 625, 631 (7th Cir. 2022). There is no indication or allegation of such an impediment being placed in Mr. Ritchie's way. Counsel suggests that Mr. Ritchie could not have filed anything on his own behalf so long as Mr. Cleary and Mr. Westerfeld were still his attorneys of record, but 18 U.S.C. § 3599(e) clearly would have allowed him or someone on his behalf to file a motion to substitute counsel.

Alternatively, the court will consider the possibility that the Rule 60(c) "reasonable time" limit did not begin to run until new counsel were appointed for Mr. Ritchie in this court in mid-October 2024. Counsel urge that due to the complexity of capital litigation generally and of Mr. Ritchie's case in particular, including obtaining expert opinions on his behalf, they could not

have reasonably been expected to file the motion to set aside any earlier than they did. Under the circumstances, the court concludes that they unreasonably delayed filing it.

Under some, possibly even many, circumstances, a delay of approximately seven months from time of appointment to time of filing a Rule 60(b) motion in a capital case would be reasonable. *See, e.g.*, *Bynoe v. Baca*, 966 F.3d 972, 981 (9th Cir. 2020) ("A seven-month delay is well within the timeframe considered [to be reasonable] and the presumptive one-year timeframe suggested by . . . Rule [60(b)]"). However, *Bynoe* also noted that the Rule 60(b) motion in that case, based on a change in decisional law, was filed by counsel just two months after their appointment. *Id.* at 981-82.

Here, counsel are experienced capital litigation defenders. They would not have been "starting from scratch" when it came to assessing Mr. Ritchie's case.[7] The court also finds it highly relevant that the arguments they present to this court are almost identical to the arguments presented by the State PD at the beginning of November 2024 in support of Mr. Ritchie's being allowed to pursue successive PCR. Counsel here managed to obtain two additional and more thorough expert reports than the State PD had at the time of their filing, which were not completed until early May.[8] Still, the court cannot discern why a motion to vacate was not filed until one week ago. Granted, the Indiana Supreme Court did not definitively set Mr. Ritchie's execution date until mid-April. But, the necessary information and legal arguments that counsel now presents to the court, filed in a very limited time frame before his execution date, could have been filed much

---

[7] The court suspects some investigation into Mr. Ritchie's case already occurred before counsel formally appeared, volunteering to represent him.

[8] The court questions, but need not definitively decide, whether such evidence even would be admissible in a federal habeas proceeding, pursuant to *Shinn v. Ramirez*, 596 U.S. 366 (2022) (holding that when reviewing *Martinez-Trevino* habeas claims, a federal court generally cannot consider any evidence outside the original state-court records).

earlier. There also is no apparent reason why concurrent proceedings could not have been ongoing before both this court and the Indiana Supreme Court. Under the particular facts and circumstances here, the approximately seven months between appointment of counsel and the filing of the 60(b) motion was not a "reasonable" amount of time. *See Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (holding Rule 60(b) motion in capital case, filed nearly eight months after change in decisional law and two days before execution date, was not filed with a "reasonable time"); *but see In re Johnson*, 935 F.3d 284, 289 (5th Cir. 2019) (noting district court's finding that 60(b) motion filed six months after appointment of new counsel for capital habeas petitioner was timely); *Ramirez v. Davis*, 780 F. App'x 110, 117 (5th Cir. 2019) (stating, in ruling on certificate of appealability request, that "reasonable jurists" could conclude that 18-month delay in filing Rule 60(b)(6) motion after new counsel was appointed was not unreasonable, where state agreed to at least some of the delay).

In sum, the court concludes Mr. Ritchie has not made a "strong showing" that his Rule 60(b)(6) motion was filed with a "reasonable time" and, therefore, he has only a low likelihood of success on the merits of that motion. Specifically, the court finds there was no impediment to Mr. Ritchie seeking substitution of counsel well before October 2024, making the filing of this motion several years late. Alternatively, even if "reasonable time" frame for filing this motion began in October 2024, under the specific facts and circumstances here, it was untimely.

## B. Irreparable Injury and the Public Interest

The court does not accept the State's argument that Mr. Ritchie has not adequately shown he would suffer irreparable injury in the absence of a stay. Death most assuredly is irreparable injury. But both the government and the friends and family of Officer Toney "'have an important

interest in the timely enforcement of a sentence.'" *Bucklew v. Precythe*, 587 U.S. 119, 149 (2019) (quoting *Hill*, 547 U.S. at 584).

The court also believes it must be cautious in not allowing a Rule 60(b)(6) motion to swallow the clear deadlines for habeas proceedings under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). One of AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). AEDPA's general one-year limitations period for filing a habeas corpus petition "quite plainly serves the well-recognized interest in the finality of state court judgments. . . . It reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Id.* The court's granting of a motion to vacate at this point in time would be inconsistent with AEDPA's underlying purposes. The governmental interest in finality, and in recognizing federal courts' limited ability to interfere in state court proceedings under AEDPA, weighs in favor of denying Mr. Ritchie's stay request.

The court also notes that in *Buck*, the Supreme Court held that Rule 60(b)(6) would be an appropriate basis for relief from a previous denial of a habeas corpus petition, where there were sufficient allegations of *Martinez-Trevino* ineffective assistance of counsel in addressing the prosecution's "odious" use of race during the punishment phase of a capital trial. *Buck*, 580 U.S. at 124. The claims Mr. Ritchie presents do not raise the same "odious" racial discrimination concerns, or any discrimination concerns.

Finally, the court acknowledges the thoughtful opinions of Indiana Supreme Court Chief Justice Rush and Justice Goff and their strong belief that Mr. Ritchie should have been allowed to pursue a successive PCR petition in state court. However, to be given permission to pursue successive PCR, an Indiana prisoner need only show "a reasonable possibility that the petitioner

22

is entitled to post-conviction relief." Ind. Post-Conviction Relief R. 1(12). Importantly, unlike the strict time limits prescribed for both initial habeas corpus proceedings and motions for relief from judgment in federal court, there is no time limit for seeking permission to file a successive PCR petition under Indiana law. This court must honor and enforce the time limits imposed on it by federal law.

The court does not lightly undertake this ruling. "[I]n a human institution there is always some risk of error. All we can do is to strive to minimize it and to follow the law to the best of our ability." *Purkey v. United States*, 964 F.3d 603, 616 (7th Cir. 2020). Given the low likelihood of success on Mr. Ritchie's belated Rule 60(b)(6) motion and balancing the equities in favor of the finality of these habeas proceedings, the court determines that Mr. Ritchie's motion to stay his execution must be **DENIED**. Dkt. [65].

### III. Certificate of Appealability

It is not entirely clear that Mr. Ritchie would be required to obtain a certificate of appealability from this court in order to directly appeal this ruling to the Seventh Circuit. 28 U.S.C. § 2253(c)(1)(A) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." In one sense, the court's ruling is not technically "final," but of course it is practically speaking. "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, [which] includes showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473,

483–84 (2000) (cleaned up). The court concludes this standard has been met here, and to the extent a certificate of appealability may be necessary, it **GRANTS** such certificate.

Also, to the extent this is an interlocutory ruling, the court believes it would be one over which the Court of Appeals would have jurisdiction under 28 U.S.C. § 1292(a)(1), because it is in effect the denial of an injunction. Alternatively, the court would certify this order as an appropriate immediately appealable order under 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**

Date: 5/17/2025

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Tyler G. Banks
INDIANA ATTORNEY GENERAL
tyler.banks@atg.in.gov

Daniel Lawless
FEDERAL COMMUNITY DEFENDER OFFICE – E.D. OF PENNSYLVANIA
daniel_lawless@fd.org

Shawn Nolan
FEDERAL COMMUNITY DEFENDER OFFICE – E.D. OF PENNSYLVANIA
shawn_nolan@fd.org

Caroline Templeton
INDIANA ATTORNEY GENERAL
caroline.templeton@atg.in.gov